## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **TRACY E. PALMEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C.A. No. 05-166-SLR** |
| | ) | |
| **DAVID WENDKOS and DAVID** | ) | |
| **STACY OF DELAWARE, INC.,** | ) | **JURY TRIAL DEMANDED** |
| **t/a CASTLE DEALERSHIPS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### ANSWER OF DEFENDANT DAVID STACY OF DELAWARE, INC.

Defendant David Stacy of Delaware, Inc. t/a Castle Dealerships ("Castle"), by its

counsel, hereby responds to Plaintiff's Complaint:

### Nature of the Action, Jurisdiction and Venue

1.      To the extent Paragraph 1 alleges facts requiring a response, Defendant

Castle denies said allegations; to the extent Paragraph 1 purports to state a legal

conclusion, no response is required.

2.      Admitted that 42 U.S.C. Section 2000e-5(k) allows for the recovery of

damages and other appropriate legal and equitable relief for unlawful employment

practices; otherwise Defendant Castle denies that Plaintiff is entitled to recover same.

3.      Paragraph 3 states a legal conclusion to which no response is required.

4.      Paragraph 4 states a legal conclusion to which no response is required.

5.      Admitted that Plaintiff filed a charge with the Delaware Department of

Labor and that it was cross-filed with the EEOC and that EEOC closed its file adopting

the findings of the Delaware Department of Labor; specifically, a No-Cause

Determination based upon the evidence provided indicating that Plaintiff was terminated

for lack of production during her period of probation and not as a form of retaliation for

reporting sexual harassment.  In addition thereto, Paragraph 1, first sentence, states a

legal conclusion to which no response is required.  Otherwise, Defendant Castle is

without knowledge or information sufficient to form a belief as to the truth of any

remaining averments in this paragraph.

**Parties**

6.      Defendant Castle admits that Plaintiff Tracy E. Palmen is a female;

otherwise, Defendant Castle is without knowledge or information sufficient to form a

belief as to the truth of this averment.

7.      Admitted except that on the date of the filing of Plaintiff Palmen's

Complaint, Defendant David Wendkos was not an employee of Defendant Castle at 122

South DuPont Highway and, therefore, could not be served at that place.

8.      Admitted.

**Facts Common To All Counts**

9.      Admitted that Plaintiff Palmen was interviewed on several occasions by

employees of Defendant Castle, including without limitation, Ed Gavin, the then-General

Sales Manager, Don Lavin, the then Executive Director, and David Wendkos, the then

Vice President; further admitted that Defendant Castle had purchased the assignment of

the Subaru Franchise from NuCar; further admitted that Plaintiff Palmen was hired as the

Subaru Sales Manager by Defendant Castle on the terms and conditions set forth in a

written Pay Plan, a copy of which is attached hereto and incorporated herein as Exhibit

2

A; finally admitted that Plaintiff Palmen represented that she had experience in connection with automotive sales; otherwise denied.

10.     Admitted that in his capacity as Vice President, Defendant Wendkos made numerous visits to all Castle showrooms, that on one occasion Don Lavin telephoned Plaintiff Palmen and that Plaintiff Palmen stated that Defendant David Wendkos was hanging around the Subaru showroom and spending a lot of time talking to Ruth Rivera, that Don Lavin asked if she wanted him to address the issue with Defendant David Wendkos, and Plaintiff Palmen said "No, it's no big deal, I can handle it" and that she would just ask Defendant David Wendkos to leave the showroom; denied, including without limitation that Plaintiff Palmen ever spoke with Don Lavin, about alleged sexual harassment of Ms. Rivera by Defendant David Wendkos and denied that Don Lavin informed Plaintiff Palmen that Defendant David Wendkos had a serious problem with women and that he still was a problem and denied that Don Lavin stated "I don't know what to do about David;" denied that Defendant David Wendkos made lewd comments to Ms. Rivera and, upon information and belief, denied that Ms. Rivera told Plaintiff what Plaintiff alleges in this paragraph.  Otherwise, Defendant Castle is without knowledge or information sufficient to form a belief as to the truth of alleged communications between Plaintiff Palmen and Ms. Rivera.

11.     Admitted that during October 2002, Castle Dealership employees, including Plaintiff, went on a business trip to Atlantic City and that they went out to dinner; otherwise denied.

12.     Defendant Castle is without knowledge or information sufficient to form a belief as to whether or not on one or more occasions Defendant David Wendkos would

3

have walked into Mr. Weisen's office when Plaintiff Palmen was present; otherwise denied.

13.    Denied that the event described by Plaintiff in paragraph 12 occurred and, therefore, denied.

14.    Defendant Castle is without knowledge or information sufficient to form a belief as to whether or not on one or more occasions Defendant David Wendkos would have walked into the Service Manager's office when Plaintiff Palmen was present; otherwise denied.

15.    Denied.

16.    Admitted that Defendant Wendkos took a vacation to Mexico in November 2002; Defendant Castle is without knowledge of information sufficient to form a belief as to whether on one occasion Defendant David Wendkos may have requested Plaintiff Palmen to pick up some documents in his office; otherwise denied.

17.    Defendant Castle is without knowledge or information sufficient to form a belief as to the truth of this averment; otherwise denied.

18.    Defendant Castle is without knowledge or information sufficient to form a belief as to what Plaintiff asked an unidentified salesperson in the Subaru dealership; otherwise denied, including based upon Defendant Castle's denial of any complaints of sexual harassment of Plaintiff that Defendant Castle failed to take any action.

19.    Admitted that after Thanksgiving, in or about the week of December 2, 2002, Defendant Wendkos had plans to go to San Francisco with his wife, leaving on a Wednesday or Thursday. Further admitted that at or about this time, Defendant Wendkos walked into the Subaru showroom and overheard Plaintiff telling a salesperson that she

4

had modeled and had even posed nude.  The salesperson said that Plaintiff should let him

see those photographs, and Defendant Wendkos agreed with the salesperson.  Plaintiff

then inquired of Defendant Wendkos as to whether he liked naked pictures, to which

Defendant Wendkos responded that he had nude photographs of his college girlfriend but

that his wife had found some of them and that he no longer looked at them; otherwise

denied.

      20.     Defendant Castle is without knowledge or information sufficient to form a

belief as to what Plaintiff may have requested of an unidentified employee; otherwise

denied.

      21.     Admitted that the week before Defendant Wendkos left for San Francisco,

he was driving a Subaru Outback Sedan as a demo but decided to switch to another

vehicle, at which time Plaintiff decided to take the same Outback as her demo.  Admitted

as he was preparing to leave on Tuesday night, Defendant Wendkos realized that he had

left a number of CD's, primarily sales training in nature, in the glove box of the Outback

and ran over to Plaintiff Palmen before she left, Defendant Wendkos told her that he

thought he had left the CD's in the glove box, got in the passenger side of the Outback,

opened the glove box, found that the CD's were, in fact, in the glove box, took them out,

got out of and closed the door to the Outback; otherwise denied.

      22.     Admitted that Defendant Wendkos returned from San Francisco and

entered the Acura dealership; otherwise denied.

      23.     Admitted that Defendant Castle had a strict policy that if a sales employee

arrived late for an 8:30 a.m. Saturday morning sales meeting, that employee would not be

allowed access, that on the morning of Saturday, December 28, 2002, Plaintiff Palmen

arrived after 8:30 a.m. and found the door locked, that Plaintiff Palmen banged on the door, shook the door, and screamed for several minutes; she then ceased behaving in this manner.  Further admitted that subsequently Plaintiff Palmen told Defendant Wendkos that she just didn't want to go to the holiday party and that Defendant Wendkos inquired as to whether if she was so miserable, why didn't she just quit.  Plaintiff commenced yelling "What did you say to me?" and walking toward Defendant Wendkos.  Defendant Wendkos turned and walked away; otherwise denied.

24.    Admitted that Plaintiff Palmen was told on one or more occasions that her group was not meeting sales projections and that the bonuses she earned were far less than her weekly draw against bonus; otherwise, Defendant Castle is without knowledge or information sufficient to form a belief as to the truth of these averments.

25.    Admitted that after January 1, 2003, Don Lavin spoke with Plaintiff Palmen, that Plaintiff Palmen told Don Lavin that Defendant Wendkos had asked her about some pictures, that when Don Lavin inquired of Plaintiff Palmen in this regard, Plaintiff Palmen said that she couldn't talk about it at that time because she had her kids in the car with her and that Don Lavin told Plaintiff Palmen that he would discuss it with her when she came to pick up her final paycheck; otherwise denied.

26.    Admitted that in early January 2003, Plaintiff Palmen went to the Castle Dealership to obtain her final paycheck, that Don Lavin brought her into the office of John Wendkos and informed John Wendkos that Plaintiff Palmen wanted to know why she was fired, whereupon John Wendkos responded that she was let go because Subaru sold eight cars prior to her departure in December; otherwise denied.

6

## zCOUNT I

### Title VII – Hostile Work Environment

27.    Defendant Castle incorporates by this reference pursuant to F.R.Civ.P. 10(c) its responses to the allegations contained in paragraphs 1 through 26 of the Complaint as if fully set forth herein.

28.    Admitted that Plaintiff Tracy Palmen is a female; otherwise, this paragraph purports to state a legal conclusion to which no response is required.

29.    Denied.

30.    Denied.

31.    Denied.

32.    Denied.

33.    Denied.

34.    Denied.

## COUNT II

### Title VII – Quid Pro Quo

35.    Defendant Castle incorporates by this reference pursuant to F.R.Civ.P. 10(c) its responses to the allegations contained in paragraphs 1 through 34 of the Complaint as if fully set forth herein.

36.    Admitted that Plaintiff Tracy Palmen is a female; otherwise, this paragraph purports to state a legal conclusion to which no response is required.

37.    Denied.

38.    Denied.

39.    Denied.

7

WM1A 54305v1 04/12/05

40.    Denied.

41.    Denied.

## COUNT III

### Title VII – Retaliation

42.    Defendant Castle incorporates by this reference pursuant to F.R.Civ.P. 10(c) its responses to the allegations contained in paragraphs 1 through 41 of the Complaint as if fully set forth herein.

43.    Admitted that Plaintiff Tracy Palmen is a female; otherwise, this paragraph purports to state a legal conclusion to which no response is required.

44.    To the extent this paragraph alleges facts requiring a response, Defendant Castle denies said allegations; otherwise, this paragraph states a legal conclusion to which no response is required.

45.    To the extent this paragraph alleges facts requiring a response, Defendant Castle denies said allegations; otherwise, this paragraph states a legal conclusion to which no response is required.

46.    Denied.

47.    Denied.

### Affirmative Defenses

As Affirmative Defenses to the Complaint, Defendant Castle alleges as follows:

48.    FIRST:   Any and all actions taken by Defendant Castle with respect to Plaintiff's employment or the terms and conditions thereof were based upon legitimate, non-discriminatory business reasons and were taken without regard to Plaintiff's gender. Specifically, Plaintiff was terminated for lack of production:

8

(a)    Plaintiff was hired effective October 1, 2002 pursuant to a Written Pay Plan (Exhibit A). Initially this Pay Plan was a three-month trial period, from October 1, 2002 through December 31, 2002, during which Plaintiff was to receive not only her $900 weekly salary, but also guaranteed a $400 weekly draw against bonus.

(b)    Plaintiff's performance was so dismal that the bonuses she earned were far less than her weekly draw against bonus during each and every month of her employment. For example, the projection for October sales was 18 cars; Plaintiff and her group sold 9 cars; the production for November was again 18 cars; Plaintiff and her group sold 18 cars; the projection for December was 20 cars; as of her December 20, 2002 meeting with Don Lavin, Plaintiff and her group had sold 3 cars.

(c)    Plaintiff's lack of production does not change significantly taking into account the entire month of December 2002. There were 3 cars sold on December 27 (a day when it appears that Plaintiff was not at work), one car sold on December 28, and 2 cars sold on December 31, totaling less than one-half of the targeted projection for the entire month of December 2002. The goal of Defendant Castle Dealerships was to reach 35 new Subaru sales per month commencing in January 2003.

(d)    The production of Plaintiff and her sales staff was inconsistent with that of the other two sales managers and their respective staffs for the month of December 2002. The projection for Hyundai was 48 vehicles; that sales

manager and staff sold 47 vehicles. The projection for Acura for December 2002 was 36 vehicles; that sales manager and staff sold 42 vehicles.

      (e)     Plaintiff is well aware of the issues involving her production.

      (f)     On December 20, 2002, Plaintiff met with Donald Lavin, and he reviewed in detail with her management's concerns relating to her lack of production. Lavin memorialized the meeting with a Memorandum to File (Exhibit B). Although offered the opportunity, at no time during the course of Plaintiff's meeting with Mr. Lavin did she express any complaint of discrimination/harassment.

      (g)     In addition, upon information and belief, Plaintiff told the Office of Unemployment Insurance, Department of Labor, Licensing and Regulations of the State of Maryland that she was discharged because her "quality of work did not meet her company's standards."

      (h)     In summary, Plaintiff's employment was terminated based upon the lack of production of Plaintiff and her sales staff at the conclusion of the period for which she was guaranteed a $400 draw against bonus. Plaintiff's claims of discrimination are barred and/or recovery of damages is precluded because Plaintiff unreasonably failed to take advantage of Defendant Castle's preventive or corrective opportunities to avoid harm otherwise.

49.     SECOND:  Plaintiff's Complaint fails to state a cause of action upon which relief can be granted as a matter of fact and/or law.

50.     THIRD:  Plaintiff's claims are barred in whole or in part by the applicable Statutes of Limitations, failure to exhaust remedies, or jurisdictional prerequisite to suit.

10

51    FOURTH:  Plaintiff's claims are barred by estoppel, release, latches, set-off, or waiver.

52.    FIFTH:  At all times relevant hereto, Defendant Castle acted in good faith and has not violated any rights which may be secured to Plaintiff under any Federal, State or local law, rule, regulations or guidelines.

53.    SIXTH:  Plaintiff's claims are barred, to the extent that discovery may show that Plaintiff engaged in misconduct prior to or during her employment.

54.    SEVENTH:  Plaintiff's claims for damages are barred or reduced by her failure to mitigate her alleged damages.

55.    EIGHTH:  Plaintiff was not subjected to any harassment or retaliation during her employment with Defendant Castle.

56.    NINTH:  Defendant Castle did not engage in any unlawful employment practice with respect to Plaintiff.

57.    TENTH:  Alternatively, Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by Defendant Castle or to avoid harm otherwise.

58.    ELEVENTH:  Alternatively, Defendant Castle took prompt and adequate remedial action reasonably calculated to prevent any harassment.

59.    TWELFTH:  Defendant Castle asserts every defense available to it under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000(e) *et seq.*

60.    THIRTEENTH:  Plaintiff is not entitled to punitive damages.

61.    FOURTEENTH:  Plaintiff's claims for relief are barred, in whole or in part, because at all times pertinent hereto, Defendant Castle engaged in good faith efforts

11

to comply with applicable laws and otherwise acted within the scope of the exceptions to

vicarious liability for punitive damages enumerated by the United States Supreme Court

in **Kolstad v. American Dental Association, 527 U.S. 526 (USSC 1999).**

      **WHEREFORE,** Defendant Castle requests that Plaintiff's Complaint be

dismissed with prejudice and/or judgment entered in favor of Defendant Castle and

against Plaintiff with Plaintiff assessed Defendant Castle's reasonable counsel fees and

costs.

                      **FOX ROTHSCHILD LLP**

                      /s/ Jeffrey M. Weiner, Esquire #403

                      **JEFFREY M. WEINER, ESQUIRE #403**
                      919 North Market Street, Suite 1300
                      P.O. Box 2323
                      Wilmington, DE 19899-2323
                      (302) 654-7444
                      Counsel for Defendant

**DATED:    April 27, 2005**

**EXHIBIT A**

To:    Administration
From:  John Wendkos
Date:  September 28, 2002
Re:    Pay Plan for Tracy Palmen

Effective October 1, 2002, the following shall serve as Tracy Palmen pay plan:

- $900.00 per week Salary
- $400.00 per week draw against bonus
- 1% of Total Sales and Finance Gross over $350,000 through 2002, $400,000 thereafter
  - Total Gross is less advertising expense in excess of $60,000 through 2002, $80,000 thereafter
  - Total Gross is less policy and finance charge backs
- Bonus for meeting monthly sales volume projection
  - Sales Projection shall be equal the six month rolling average plus one unit.
  - $1,500.00 for "meets". This is defined as reaching projection.
  - $2,000.00 for "exceeds". This is defined as exceeding projection by 10% or greater.
  - $3,000.00 for "distinguished". This is defined as exceeding projection by 20% or greater.
- $500.00 Bonus for meeting or exceeding Regional Average score for SSI

From October 1, 2002 through December 31, 2002, Tracy shall be paid the "meets" projection bonus automatically, as well as the SSI bonus automatically. The $1300.00 per week shall therefore be guaranteed until the end of calendar year 2002. Effective January 1, 2003, no such guarantees shall remain in effect.


Tracy U. Palmen
Tracy Palmen



John Wendkos

## CORRESPONDENCE/NOTES

EXHIBIT B

Dec 20, 2002

TO: Fice
From: Don Lavin
Subj: Tracy Palmen Mtg.

I met with Tracy Palmen this afternoon to express upper management concerns related to the month to date performance of the Subaru Franchise. Key discussion points are listed below:

- Concern over number of missed work days due to illness.
- Three (3) Subaru's delivered month to date
- Improper management of 2 Trac Kiosk System
- Discussions with Subaru Factory Personnel concerning internal dealership issues (stop sale fixes)
- Discussions with Tony Townsend regarding confidential information reviewed at recent managers meeting
- ordering of Subaru Jackets for sales personnel

Tracy felt she needed additional support in the following areas to ensure success with Subaru:

- Letter from Castle Subaru Management to recently acquired Nucar owner list
- Control number of used car sales personnel hanging out in the Subaru showroom
- Allowed to take scheduled day off without a hassle from GSM. More support in her showroom when she is not there (GSM/other MGRS)

Over

© 2000 Priority Management Systems Inc.
Icon # PS0113

## CERTIFICATE OF SERVICE

I, Jeffrey M. Weiner, Esquire, hereby certify that copies of the attached Answer of

Defendant David Stacy of Delaware, Inc. were served this 27th day of April, 2005 as

follows:

BY HAND:

Charles M. Oberly, III, Esquire
Karen V. Sullivan, Esquire
Oberly, Jennings & Rhodunda, P.A.
800 Delaware Avenue, Suite 901
P.O. Box 2054
Wilmington, Delaware  19899


/s/ Jeffrey M. Weiner, Esquire #403
Jeffrey M. Weiner, Esquire