IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRACY E. PALMEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 05-166-SLR |
| | ) |
| DAVID WENDKOS and DAVID | ) |
| STACY OF DELAWARE, INC., | ) |
| t/a CASTLE DEALERSHIPS, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW OF DEFENDANT, DAVID WENDKOS, IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

I.  **INTRODUCTION AND FACTS**

Plaintiff, Tracy Palmen ("Plaintiff" or "Palmen"), alleges in her Complaint that Defendants, David Wendkos ("Wendkos") and David Stacy of Delaware, Inc., t/a Castle Dealerships ("Castle"), subjected her to hostile work environment and *quid pro quo* sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") in connection with her employment by Castle. (See Plaintiff's Complaint).

There is no individual liability under Title VII. Accordingly, Palmen's claims against Wendkos must be dismissed with prejudice.

II.  **ARGUMENT**

 A.  **Standard of Review**

In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998). Dismissal under Federal Rule of Civil Procedure 12(b)(6) is based on the complaint and is limited to those instances where "it appears

beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted); see also In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 215 (3d. Cir. 2002). Although the Court must accept well-pleaded allegations in Palmen's complaint as true, the Court need not accept as true her bald assertions or legal conclusions. Id. at 215-16.

### B. There Is No Individual Liability Under Title VII and, Accordingly, All Claims Against Wendkos Must Be Dismissed.

Plaintiff asserts in her Complaint that Wendkos violated Title VII by harassing and retaliating against her. (See Plaintiff's Complaint). It is well-settled that there is no individual liability under Title VII. In Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1078 (3d Cir. 1996), the Third Circuit held that individual employees cannot be held liable under Title VII. Since then, this Court consistently has held that there is no individual liability under Title VII. See Charlton v. Blue Cross & Blue Shield of Delaware, No. CIV. A. 99-34-GMS, 2001 WL 694533, at * 2 n. 5 (D. Del. June 20, 2001); Nelson v. Fleet National Bank, 949 F.Supp. 254, 258 (D. Del. 1996).

As such, Palmen's claims against Wendkos must be dismissed in their entirety with prejudice.

III.   **CONCLUSION**

Because there is no individual liability under Title VII, the Complaint of Plaintiff, Tracy Palmen, must be dismissed as to Defendant, David Wendkos, in its entirety with prejudice.

    Respectfully submitted,

    **FOX ROTHSCHILD LLP**

    <u>/s/ Jeffrey M. Weiner, Esquire #403</u>
    **JEFFREY M. WEINER, ESQUIRE #403**
    919 North Market Street, Suite 1300
    P.O. Box 2323
    Wilmington, DE 19899-2323
    (302) 654-7444
    Counsel for Defendants

Date: April 26, 2005

Westlaw.

Not Reported in F.Supp.2d                                                                                     Page 1
2001 WL 694533 (D.Del.)
(Cite as: 2001 WL 694533 (D.Del.))

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Sonia A. CHARLTON, Plaintiff,
v.
BLUE CROSS & BLUE SHIELD OF DELAWARE
INC., Don Hockmuth, Jerry Icenogle, and
Vicki Sessoms, Defendants.
No. CIV. A. 99-34-GMS.

June 20, 2001.

MEMORANDUM AND ORDER

West Headnotes

[1] Civil Rights ⚔1113
78k1113 Most Cited Cases
    (Formerly 78k143)
Title VII does not allow plaintiffs to file suit against individuals. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[2] Civil Rights ⚔1137
78k1137 Most Cited Cases
    (Formerly 78k153)
Employee who brought Title VII race and national origin discrimination claims failed to show that employer's proffered reason for reassigning her was pretextual; employee provided only unsworn assertions that she was competent and received promotions and raise, but employer cited employee's own testimony, performance review, written warnings, and probationary status, to establish employee's tardiness, inattentiveness to detail, uncooperativeness toward management and peers, and errors on important projects, and employee's problems continued after promotions and raise. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[3] Civil Rights ⚔1137
78k1137 Most Cited Cases
    (Formerly 78k153)
Employee who brought Title VII race and national origin discrimination claims had two ways to satisfy her ultimate burden of showing employer's proffered reasons for reassigning her position was pretextual; she could either offer some evidence, direct or circumstantial, to discredit employer's legitimate proffered reasons for the reassignment, or offer some evidence to illustrate that the reassignment was more likely motivated by discriminatory pretenses. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[4] Civil Rights ⚔1137
78k1137 Most Cited Cases
    (Formerly 78k153)
In Title VII action, for employee to meet her ultimate burden to show employer's proffered reasons for its adverse employment action were pretextual, employee must proffer sufficient evidence which would allow a fact finder to reasonably believe that the nondiscriminatory reasons were either fabricated or were not the actual motives for the adverse employment action. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.
SLEET, District J.

I. INTRODUCTION

*1 On January 27, 1999, the plaintiff Sonia Charlton ("Charlton"), acting pro se, filed a complaint against the defendants--Blue Cross/Blue Shield of Delaware ("BCBSD"), and Don Hockmuth, Jerry Icenogle, and Vicki Sessoms (the "individual defendants")-- alleging that she had been discriminated against on the basis of her race (black) and national origin (Jamaican) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq., and 42 U.S.C. § 1981 (D.I.1). [FN1] After answering the complaint, the defendants filed a motion for summary judgment on June 23, 2000 (D.I.26). Rather than filing a formal brief, Charlton submitted a letter on June 28, 2000, opposing the defendants' motion as untimely and stating that she exhausted her administrative remedies (D.I.29). The defendants waived their right to file a response on July 19, 2000 (D.I.30). [FN2] The defendants moved for summary judgment on three grounds. First, the individual defendants cannot be held liable under Title VII. Second, Charlton's race discrimination claim is barred because she failed to exhaust her administrative remedies. Finally, Charlton cannot establish the prima facie elements of her case or rebut the defendants' legitimate, non-discriminatory reasons for her reassignment. For the reasons set forth below, the court will grant defendants' motion for summary judgment and enter judgment in their

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

favor on all claims.

> FN1. The court will not explicitly discuss the § 1981 claim since, under the facts of this case, it rises and falls with the Title VII claim.

> FN2. Charlton then filed two letters with the court on July 23 and September 9, 2000. Although the court did not grant Charlton leave to file additional information, in light of her pro se status--and mindful of its obligation to grant such litigants leeway on procedural requirements--the court will consider the letters in reaching its ruling.

## II. BACKGROUND

BCBSD is an insurance company which employs approximately 600 people in Delaware. Charlton began her employment with BCBSD on December 14, 1972 as a Keypunch Operator. Throughout her employment, Charlton received a number of promotions including a promotion to computer operator in 1979. Charlton was transferred to the PLASM [FN3] Department in 1986 and attained the position of PLASM/Senior Analyst in 1994. The record reveals that Charlton was cited a number of times for performance problems while employed by BCBSD. One such citation was issued on July 29, 1997. As a result of this citation, Charlton received a corrective action report for insubordinate behavior. [FN4] As a result, plaintiff was placed on ongoing probation. In the fall of 1997, Charlton began work on a coding project for the St. Francis Hospital. She was the only programmer in her department who worked on the project, an important one for BCBSD. According to the record, Charlton's manager, Hockmuth, was displeased with her performance on the project because coding errors caused extensive delays and created errors in other functions.

> FN3. PLASM is a computer language which Charlton used in the coding of customer contracts.

> FN4. The basis for the citation was Charlton's intentional refusal to follow a manger's reasonable request or instruction. This is but one instance in the record where Charlton's behavior had been criticized. An August 31, 1998, Delaware Department of Labor ("D.D.O.L.") Investigative Memorandum appended to the defendants' opening brief contains numerous examples of Charlton's insubordination, disregard for management, and poor performance. See Def. Br. Sum. J.App. at A47-54. The court incorporates these instances by reference and will consider them in determining whether there are any genuine issues of material fact.

On January 15, 1998, Charlton received notification from Hockmuth that she was being reassigned to the position of Claims Processor due to deficiencies in her work product and uncooperative behavior. In the six month after she was placed on probation, Charlton's behavior was criticized by other employees at BCBSD several times as unprofessional and insubordinate.

On February 12, 1998, Charlton filed a complaint with the D.D.O.L. and, later, with the Equal Employment Opportunity Commission ("E.E.O.C."). In her charge of discrimination, Charlton alleged that she was discriminated against based on her national origin because (1) she was the only Jamaican individual working on two company projects and the only one accused of making errors, (2) no evidence was ever provided that she actually made the alleged errors, and (3) her job performance has always been satisfactory as proven by the wage increase she received on July 1, 1997. The defendants' stated reason for the demotion was that Charlton was inattentive to detail and uncooperative toward management and her peers.

*2 In response to her charge of discrimination, the D.D.O.L. conducted an investigation on August 31, 1998. Subsequently, the D.D.O.L. issued an investigative memorandum which found no reasonable cause to believe that BCBSD had discriminated against Charlton with respect to her national origin. The investigation also revealed that (1) Charlton's allegations regarding disparate treatment were not substantiated, (2) BCBSD articulated a legitimate non-discriminatory reason for its actions, and (3) Charlton was unable to show that BCBSD's actions were a pretext to mask discrimination based on national origin. The E.E.O.C. concurred with the D.D.O.L. decision and issued a dismissal and right-to-sue letter on November 7, 1998. Charlton timely filed a complaint with the court on January 27, 1999.

## III. STANDARD OF REVIEW

"Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

establishes that there is no genuine issue of material fact that can be resolved at trial and that the moving party is entitled to judgment as a matter of law." *House v. New Castle County*, 824 F.Supp. 477, 481 (D.Del.1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In evaluating whether or not there are any genuine issues of material fact, "[m]ateriality is determined by the substantive law that governs the case." *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "In this inquiry, [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* (internal quotations omitted). "A dispute is 'genuine' only if a reasonable jury could return a verdict for the nonmoving party." *Id.* "When considering a motion for summary judgment, the Court [sic] must view all facts and inferences in the light most favorable to the party opposing the motion." *Id.* (citing *Stephens v. Kerrigan*, 122 F.3d 171, 176-77 (3d Cir.1997)) (internal quotations omitted).

Moreover, "[i]f the evidentiary record supports a reasonable inference that the ultimate facts may be drawn in favor of the responding party, then the moving party cannot obtain summary judgment." *See House*, 824 F.Supp. at 481-82 (citing *In re Japanese Elec. Prod. Antitrust Litig.*, 723 F.2d 238, 258 (3d Cir.1983), *rev'd on other grounds*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Finally, at this stage of the process, "the judge's function is not himself [sic] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *See Lewis v. State of Delaware Dept. of Pub. Instruct.*, 948 F.Supp. 352, 357 (D.Del.1996) (quoting *Anderson*, 477 U.S. at 249) (internal quotations omitted).

IV. DISCUSSION

[1] The court's analysis begins, and ends, with the familiar burden shifting framework that operates in all Title VII cases. [FN5] Under well traveled Supreme Court precedent, the analysis proceeds in three steps. First, Charlton must establish a prima facie case of race or national origin discrimination by a preponderance of the evidence. *See Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (citations omitted). If Charlton can establish a prima facie case, the burden shifts to BCBSD "to articulate some legitimate, nondiscriminatory reason" for its actions. *See id.* Third, should BCBSD be able to meet its burden, Charlton must show, by a preponderance of the evidence, that the reasons offered were merely a pretext for race or national origin discrimination. *See id.* Although the burdens shift, it is important to understand that "[t]he ultimate burden of persuading the trier of fact that the defendants intentionally discriminated against the plaintiff remains at all times with the plaintiff." *See id.* The court will address the parties' respective burdens in turn.

> FN5. As noted above, the defendants raise three grounds for relief in their motion. The first two are that Charlton did not exhaust her race discrimination claim before the E.E.O.C. and improperly sued the individual defendants. The second ground is well taken--it is clear that Title VII does not allow plaintiffs to file suit against individuals *See, e.g., Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1077-78 (3d Cir.1997). Therefore, the court will enter judgment in favor of the individual defendants. Since the exhaustion ground does not entirely dispose of the case, the court will address the merits of Charlton's claims. Even aside from this procedural problem, the individual defendants and BCBSD are identical in terms of the facts and analysis as stated by the court.

*3 Charlton must adduce facts that support three conclusions in order to establish a prima facie case. First, that she is a member of a protected group. Second, that she suffered an adverse employment action. Third, that members outside the protected group received more favorable treatment. The record in this case speaks for itself. Charlton is a black woman, born in Jamaica (step one in prima facie case). She suffered an adverse employment action in January, 1998 by being reassigned to the position of Claims Processor (step two in prima facie case). Of the other employees in her department, the two non-black ones [FN6] do not appear to have been reassigned (step three in prima facie case). BCBSD argues that since Charlton's black co-workers did not work on the St. Francis Project with Charlton, there is no way she can overcome step three in the prima facie case. This argument, however, does not appear to be responsive to the question of whether members *outside* the protected group were treated more favorably. Since the record is unclear on this score, the court will proceed to the heart of the case-- whether Charlton has adduced any evidence that BCBSD's stated reason for her reassignment was a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

pretextual.

> FN6. BCBSD states that of the five other employees in Charlton's department, three were black and none of them were reassigned. Further, of the two other Jamaicans employed by BCBSD, neither of them were demoted or fired.

[2][3][4] There are two ways Charlton can satisfy her ultimate burden to show pretext. She can either offer some evidence, direct or circumstantial, to discredit BCBSD's legitimate proffered reasons for the reassignment or offer some evidence to illustrate that the reassignment was more likely motivated by discriminatory pretenses. See *Burdine*, 450 U.S. at 254-55. To meet her burden, Charlton must proffer sufficient evidence which would allow a fact finder to reasonably believe that the nondiscriminatory reasons were either fabricated or were not the actual motives for the adverse employment action. See *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994).

The court finds that Charlton has not met her burden. She has not offered any affirmative evidence to show that the nondiscriminatory reasons set forth by BCBSD are pretextual. Although she makes *unsworn* assertions in her communications to the court that she was a competent performer, there is no other evidentiary support. In contrast, BCBSD's proffered reasoning for her demotion is based upon Charlton's own testimony and other record evidence. Since 1997, Charlton had several performance and behavioral problems within the workplace as evidenced by her performance review, written warnings from her direct supervisor, and her probationary status. The record demonstrates that she was repeatedly tardy, inattentive to detail, uncooperative toward management and peers, and made numerous errors on two important projects.

Moreover, even if the court were to overlook Charlton's lack of competent evidence to support her statement that she received promotions and a raise, her claim must still fail. In brief, Charlton's allegations neither respond to nor fully rebut BCBSD's assertions regarding her job performance problems. Although it may be true that Charlton was promoted several times and received a raise, the court can not ignore her disciplinary record. According to the undisputed evidence in the record, Charlton's disciplinary problems continued well after she received her promotion in 1994 and had her salary raised on July 1, 1997. [FN7] Therefore, even if Charlton's claims regarding her work history are true, they are insufficient to meet her ultimate burden of demonstrating pretext.

> FN7. As noted above, Charlton received a corrective action report on July 27, 1997 and did not begin working on the St. Francis Hospital project until the fall of 1997.

V. CONCLUSION

*4 The court finds that Charlton cannot satisfy her burden of demonstrating that BCBSD's proffered reasons for her demotion are pretextual. Not only has she failed to adduce competent evidence, but the allegations she makes are not enough to allow a reasonable juror to find in her favor. Additionally, Charlton cannot proceed on her claims against the individual defendants.

Therefore IT IS HEREBY ORDERED that:
1. The defendants' motion for summary judgment (D.I.26) is GRANTED.
2. Summary judgment BE AND IS HEREBY ENTERED in favor of all defendants on all claims pending against them.

2001 WL 694533 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRACY E. PALMEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 05-166-SLR |
| | ) |
| DAVID WENDKOS and DAVID | ) |
| STACY OF DELAWARE, INC., | ) |
| t/a CASTLE DEALERSHIPS, | ) |
| | ) |
| Defendants. | ) |

### CERTIFICATE OF SERVICE

I, Jeffrey M. Weiner, hereby certify that a true and correct copy of the foregoing Memorandum of Law of Defendant, David Wendkos, in Support of His Motion to Dismiss Plaintiff's Complaint, was served upon the following counsel of record, this date, via first class mail:

> Charles M. Oberly, Esquire
> Oberly, Jennings & Rhodunda, P.A.
> 800 Delaware Avenue, Suite 901
> P.O. Box 2054
> Wilmington, DE 19899
> Attorneys for Plaintiff, Tracy Palmen

>> /s/ JEFFREY M. WEINER, ESQUIRE #403
>> JEFFREY M. WEINER, ESQUIRE #403

Dated: April 26, 2005